UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
KELLY PETERSON, as Executrix of the :
Estate of Oscar Peterson, Deceased,  :          13 Civ. 793 (JSR)
and JAYARVEE, INC.,                  :
                                     :          MEMORANDUM
       Plaintiffs,                   :
                                     :
          -v-                        :       
                                     :
HILARY KOLODIN, a/k/a HILARY KOLE,   :
                                     :
       Defendant.                    :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

       Plaintiffs Kelly Peterson and Jayarvee, Inc. bring this action

for copyright infringement against Hilary Kolodin, also known as

Hilary Kole, who counterclaims for a declaration of copyright

ownership.  The parties have cross-moved for summary judgment on all

claims.  By "bottom-line" Order dated August 9, 2013, the Court

denied both motions and set the case down for trial.   This

Memorandum explains the reasons for those rulings.

       On summary judgment, the Court is bound to "constru[e] the

evidence in the light most favorable to the nonmoving party and

draw[] all reasonable inferences in that party's favor."  Scottsdale

Ins. Co. v. R.I. Pools Inc., 710 F.3d 488, 491 (2d Cir. 2013).   When

confronted with cross-motions for summary judgment, the Court

analyzes each motion separately, "in each case construing the

evidence in the light most favorable to the non-moving party."

Novella v. Westchester Cnty., 661 F.3d 128, 139 (2d Cir. 2011).

1

The following material facts are undisputed unless otherwise noted.  Plaintiff Kelly Peterson is the widow of the late renowned jazz pianist Oscar Peterson.  Def.'s Statement of Undisputed Facts ("Def.'s 56.1"), ¶ 5.[1]  Oscar Peterson passed away on December 23, 2007, and his widow is one of three executors of his estate.  Id. ¶¶ 4, 6.  Plaintiff Jayarvee, Inc. owns and operates Birdland, a well-known restaurant and jazz club in New York City.  Id. ¶ 3.  Jayarvee's President and sole registered shareholder is John Valenti, who has owned and operated Birdland through Jayarvee since around 1985.  Def.'s 56.1 ¶ 2; Pls.' Rule 56.1 Statement ("Pls.' 56.1") ¶ 6.  Defendant Hilary Kolodin is an accomplished professional vocalist, who also goes by the professional name "Hilary Kole."  Def.'s 56.1 ¶ 1; Pls.' 56.1 ¶ 3.

While performing at Birdland in September 2003, Kole met Valenti, and the two began dating.  Def.'s 56.1 ¶¶ 7-8.  Kole moved in with Valenti in January 2004, and the couple occasionally referred to each other as husband and wife.  Id. ¶ 8-9.  Kole and Valenti maintained a romantic relationship until May 2011, when the two broke up and Kole moved out.  Id. ¶ 8.  The break-up was not amicable, and the mutual hostility between Kole and Valenti runs like an undercurrent through this entire case.

During Kole and Valenti's relationship, Kole often performed as a vocalist and pianist at Birdland.  Id. ¶ 10; Pls.' 56.1 ¶ 10.  For

---

[1] When cited by the Court, the parties' Rule 56.1 Statements are in agreement as to the proposition for which a given Statement is cited, unless otherwise noted.

each year from 2004 to 2011, Jayarvee issued Kole IRS form 1099 statements memorializing "nonemployee compensation" for these live performances. Def.'s 56.1 ¶ 11; Decl. of Lawrence I. Garbuz ("Garbuz Decl."), ex. J; Pl.'s 56.1 ¶ 18.  From early 2006 to 2011, Kole also worked as an employee of Jayarvee, which issued her IRS form W-2s for that period.  Def.'s 56.1 ¶ 12; Garbuz Decl., ex. J. Kole earned a base salary of $65,000 per year, the same as Valenti. Pls.' 56.1 ¶ 8.

Between August 22 and 27, 2006, Oscar Peterson played a series of twelve shows at Birdland, two per evening.  Pls.' 56.1 ¶ 11. During that engagement, Oscar Peterson and Kole met at NOLA Recording Studios in New York City ("NOLA") and recorded a total of twelve takes of four American standard songs, "More Than You Know," "Our Love Is Here To Stay," "My Romance," and "Bewitched, Bothered and Bewildered."  Id. ¶ 12; Def.'s 56.1 ¶ 15-16.  Peterson played piano and Kole sang; no other musicians participated or were involved in the recordings.  Pls.' 56.1 ¶ 13.

The parties dispute whether Kole made these recordings within the scope of her employment with Jayarvee.  Kole had no written employment contract, but plaintiffs point to the fact that the recording session took place during Oscar Peterson's engagement at Birdland, as well as Kole's statements in a prior proceeding that she worked almost every day for Jayarvee as a "singer/performer and consultant to [Birdland]" on the musical side of the business.  Aff. of Andrea Bierstein ("Bierstein Aff."), ex. E at OP/J0037; Bierstein

Aff., ex. D. at 127-30. Plaintiffs also contend that Jayarvee arranged and financed the recording time at NOLA as part of a flat fee Jayarvee paid for a series of sessions in which Kole performed duets with a number of different pianists (the "Kole Duets"). Id. ¶¶ 15-16. The Kole Duets were ultimately released in the Spring of 2010 as an album entitled "You Are There," without any songs recorded by Kole and Oscar Peterson. Pls.' 56.1 ¶ 32. But plaintiffs point out that "You Are There" was distributed pursuant to a contract signed in October 2008 between Kole and Justin Time Records, in which Kole licensed the rights to an album comprised of "duet sessions featuring artists such as Freddy Cole, Oscar Peterson," and others. Id. ¶ 25. Plaintiffs also point to an email exchange between Valenti and Kelly Peterson at the end of 2009, of which Kole was aware, in which Valenti unsuccessfully sought to obtain Kelly Peterson's permission to include songs from the Peterson-Kole recordings on the upcoming Kole Duets album. Id. ¶¶ 28-30.

For her part, Kole disputes that the Kole-Peterson recording session was part of the Kole Duets project. Def.'s Response to Pls.' 56.1 Statement ("Def.'s Response") ¶¶ 15-16. Kole also points to Kelly Peterson's deposition, in which Peterson testified that "[Kole] was there to make a recording with my husband that would be a personal memento for Mr. Valenti and Ms. Kole," and the recording session "had nothing to do with work for either my husband or Ms. Kole." Garbuz Decl., ex. K, at 59, 60. Valenti likewise testified

4

in his deposition that, in his understanding, Oscar Peterson did not believe Kole was recording in her capacity as a Jayarvee employee, because "[w]hen I first approached [Oscar Peterson] I told him this was my -- the woman that I lived with, the woman that I loved, and I would appreciate if he gave us the time and the chance to record." Garbuz Decl., ex. L, at 106.  Kole also notes that when Valenti was asked to describe the terms of Kole's employment with Jayarvee, he never mentioned making recordings.  See id. at 23-24.

In any event, shortly after the Peterson-Kole recording session, Kole, Valenti, NOLA owner Jim Czak, and recording engineer Billy Moss worked to splice together different takes in order to create a "rough cut" of the four songs.  Def.'s 56.1 ¶ 24; Garbuz Decl., ex. L, at 45-46.  In September 2006, Kole's then-manager, Mary Ann Topper, gave Kelly Peterson a CD containing the rough cut of one or more of the four songs from the Peterson-Kole session at the Monterey Jazz Festival. Def.'s 56.1 ¶ 25.[2]  Some years later, a touched-up, final version of the four songs recorded was created by recording engineer Billy Moss and pianist Mike Renzi.  Def.'s 56.1 ¶ 29.  This final version of the recordings included small corrections to the piano parts -- "minor stuff," in Valenti's words.  Defs. 56.1 ¶¶ 29, 34.  The parties agree that final recordings and the

---

[2] The parties dispute whether the CD that Topper gave Kelly Peterson contained all four songs from the Peterson-Kole session, or just one, "Bewitched, Bothered and Bewildered."  Def.'s 56.1 ¶ 25; Pls.' Responses to Def.'s Statement of Undisputed Facts ¶ 25.

5

recordings on the rough cut CD given to Kelly Peterson by Topper are "very similar."  Id. ¶ 38.

Effective January 28, 2013, Kelly Peterson and Jayarvee obtained a copyright registration for the touched-up, final sound recording of the four songs.  Pls.' 56.1 ¶ 53; Bierstein Aff., ex. S.  Effective March 4, 2013, after this action was filed, Kole obtained a competing copyright registration for the original, unedited sound recording of the initial twelve takes from the Peterson-Kole session.  Def.'s 56.1 ¶ 17.  Plaintiffs and defendant each dispute the validity of the other side's registration certificate.

One of the critical disputes in this case concerns a pre-printed form "Recording Release" signed by Kole.  See Decl. of John R. Valenti ("Valenti Decl."), ex. B.  The parties agree that this single-page form was created by Jonas Herbsman, then Kole's attorney, for use in connection with the Kole Duets project.  Pl.'s 56.1 ¶ 34.  The first paragraph of the copy of the form signed by Kole (the "You Are There Release") states: "I have rendered services as a musician and/or singer on 2005-2010 [sic] in connection with the recordings featuring Hilary Kole listed on Exhibit A attached hereto (the 'Recordings')."  Id.  The years "2005-2010" are handwritten in a blank space on the form in Valenti's handwriting.  Pls.' 56.1 ¶ 36.  There is no Exhibit A attached to the document, but between paragraphs 1 and 2 the words "'You Are There'" are handwritten in Kole's handwriting.  Pls.' 56.1 ¶ 37.  Paragraph 2

6

then states: "In consideration for my services on the Recordings, I have received the sum of ($100.) Dollars, receipt of which is hereby acknowledged. I am entitled to no other compensation in connection with the Recordings or the exploitation thereof in any and all media." Valenti Decl., ex. B. The sum "$100" is handwritten in a blank on the form, but the parties dispute who wrote it, as well as whether Kole was ever paid $100 by Valenti or Jayarvee. Pls.' 56.1 ¶¶ 39-40; Def.'s Response ¶¶ 39-40. The remaining paragraphs of the form (1) transfer all rights to the Recordings to "you," (2) grant "you" the right to use the releasor's name and likeness in connection with the Recordings, (3) provide that the release contains the entire agreement between the parties, and (4) provide for the agreement to be governed by New York law. Valenti Decl., ex. B.

In addition, the bottom left side of the release contains a list in Kole's handwriting, nestled around other items on the form, of the four songs Kole recorded with Oscar Peterson, with the notation "w/ Oscar Peterson" after each song. Id.; Pls.' 56.1 ¶ 43. The bottom right side of the document contains Kole's signature, address, and Social Security Number, all in Kole's handwriting. Id. ¶ 41. The bottom of the page also includes the date "2/10," in Valenti's handwriting. Id. ¶ 42.

The parties dispute the circumstances under which Kole signed and filled out the You Are There Release, as well as who properly possesses it. Valenti states in a declaration that in May 2013 he

7

found the original copy of the You Are There Release in the
apartment he and Kole had previously shared.  Valenti has also
testified that Kole signed and gave him the You Are There Release in
the dining room of their apartment in February 2010, after the Kole
Duets were recorded.  Bierstein Aff., ex. C at 46-47, 50.
Plaintiffs accordingly assert that the You Are There Release belongs
to Jayarvee.  Pls.' 56.1 ¶ 35.

Kole, on the other hand, disputes these assertions, and states,
in a declaration, that she signed and wrote her personal information
on the You Are There Release only to demonstrate to another elderly
musician how the form should be filled out.  Suppl. Aff. of Hilary
Kolodin ("Kole Aff.") ¶ 15.  Kole also testified at her deposition
that when she signed the form, critical handwritten items on it --
the years "2005-2010," the words "You Are There," the sum "$100,"
the date "2/10," and the list of "[s]ongs [r]ecorded" with Oscar
Peterson -- did not appear on the document, and were added only
later.  Bierstein Aff., ex. A, at 117-20.  As to the items in Kole's
handwriting, Kole could not recall precisely when or why she added
them, id. at 120, 125, but asserts that the You Are There Release
was never intended to convey any rights to anyone, and that it
properly belongs to her, not Jayarvee or Valenti.  Kole Aff., ¶ 15.
Kole explains that she mistakenly left the document behind when she
moved out of her and Valenti's apartment in haste in May 2011.
Bierstein Aff., ex. A, at 126.

8

In addition to the You Are There Release, the summary judgment record also contains seven other copies of the same pre-printed form release.  Six of those copies are signed by six different pianists with whom Kole performed as part of the Kole Duets project.  Pls.' 56.1 ¶ 34; Bierstein Aff., ex. M.  The seventh additional copy (the "Moments Release") is signed by Kole, has all blank spaces filled in, and contains between paragraphs 1 and 2, in Valenti's handwriting, the words "either: Come Back to Me/Moments Like This."  Pls.' 56.1 ¶¶ 46-47; Valenti Decl., ex. B.  The document is dated December 3, 2010, a few days after Jayarvee executed an agreement with Victor Entertainment, a Japanese recording company, to produce an album featuring Kole and distribute it in Asia.  Pls.' 56.1 ¶¶ 44, 49.  In connection with this agreement, Kole signed an "Inducement Letter" agreeing to all provisions of the Jayarvee-Victor Entertainment agreement "as if [she] were a party."  Id. ¶ 45.  The album was in fact released in 2010 under the title "Moments Like This."  Id. ¶ 44.  Kole does not dispute that Jayarvee properly possesses the Moments Release, which Valenti also found in the apartment he and Kole formerly shared along with the You Are There Release.  Id. ¶ 48.

On or about January 22, 2013, Kole provided an Internet radio station with a copy of Kole and Oscar Peterson's recording of "More Than You Know," which was then publicly played online the same day.  See Ans. ¶ 12.  According to the complaint, the recording remains

available to be heard online on blogtalkradio.com.  See First Am.
Compl. ¶ 12 (describing steps to access the recording).

Plaintiffs filed this action on February 4, 2013, asserting a
single count of copyright infringement.  Plaintiffs seek injunctive
relief and attorneys' fees, but have waived any claim for actual or
statutory damages.  "To establish infringement of copyright, two
elements must be proven: (1) ownership of a valid copyright, and (2)
copying of constituent elements of the work that are original. The
word 'copying' is shorthand for the infringing of any of the
copyright owner's five exclusive rights" described in [17 U.S.C.] §
106."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir.
2010).  In her answer, Kole asserts a counterclaim seeking a
declaration that, as one of the authors of the Peterson-Kole
recordings, she owns the copyright to them.  The principal issues in
this case concern (1) whether Kole transferred any interest she had
in the relevant recordings to Jayarvee through the You Are There
Release, (2) whether, in any event, copyright ownership initially
vested in Jayarvee rather than Kole because Kole made the recordings
as a "work for hire," 17 U.S.C. § 201(b), and (3) whether plaintiffs
have stated a valid claim for attorneys' fees under 17 U.S.C. § 412.

Before turning to these questions, however, the Court must
address two threshold issues related to the parties' copyright
registrations.  The first issue concerns the burden of proof.
Section 410(c) of the Copyright Act provides that a "certificate of
a registration made before or within five years after first

publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." This presumption "orders the burdens of proof," relieving a purported copyright owner of any duty "in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the [alleged infringer], by effectively challenging them, shifts the burden of doing so to the [purported owner]." Carol Barnhart Inc. v. Econ. Cover Corp., 773 F.2d 411, 414 (2d Cir. 1985) (quoting H.R. Rep. No. 94-1476, reprinted in 1976 U.S.C.C.A.N. 5659, 5773). Of course, "a certificate of registration creates no irrebuttable presumption of copyright validity," and "[w]here other evidence in the record casts doubt on the question, validity will not be assumed." Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 908 (2d Cir. 1980).

In this case, however, both sides have obtained copyright registrations, and although they are for different versions of the Peterson-Kole recordings -- plaintiffs' for the final version, and Kole's for the original, unedited version -- it is clear that both registrations cannot stand simultaneously.[3] Given that the two

---

[3] Competing registrations are not uncommon. After all,

> [t]he Copyright Office is an office of record[,] and it does not have the authority to adjudicate adverse or conflicting claims submitted for registration. Each claim is examined to determine if it complies with statutory and regulatory requirements; if it does, it is registered. When conflicting claims are received, the Office may put both claims on record if each is acceptable on its own

registrations were obtained just five weeks apart and in clear

contemplation of this litigation, the Court concludes that any

evidentiary weight that might be due one registration is

counterbalanced by the other, leaving no presumption on either side.

See, e.g., Martha Graham Sch. & Dance Found., Inc. v. Martha Graham

Ctr. of Contemporary Dance, Inc., 224 F. Supp. 2d 567, 586 (S.D.N.Y.

2002) ("Neither side is entitled to a presumption of copyright

validity for those competing certificates of registration."),

vacated in part on other grounds 380 F.3d 624 (2d Cir. 2004); see

also 5 Patry on Copyright § 17:120 ("Where both registrations were

obtained contemporaneously, and especially in contemplation of

litigation neither certificate should be granted prima facie

status."); 3-12 Nimmer on Copyright § 12.11[B][i] ("It might be

argued that plaintiff's and defendant's certificates cancel each

other out with respect to either party's right to claim a prima

facie presumption of originality."). In any event, the Court easily

finds that any prima facie presumption would be irrelevant here, as

both sides have come forward with sufficient proof to overcome such

a presumption. See M & D Int'l Corp. v. Chan, 901 F. Supp. 1502,

1510 (D. Haw. 1995). Regardless of how one views the evidence, it

_____

merits. It is the responsibility of the parties involved
in a dispute to pursue their rights in their works.

Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of
Contemporary Dance, Inc., 224 F. Supp. 2d 567, 586 (S.D.N.Y. 2002)
(quoting statement of Copyright Office), vacated in part on other
grounds, 380 F.3d 624 (2d Cir. 2004).

is the parties' factual contentions rather than any prima facie
presumption that will determine the outcome of this case.[4]

The second threshold issue in this case concerns whether the
plaintiffs' registration can support the particular infringement
claims asserted here. Kole argues that it cannot, for two reasons.
First, she argues that the estate of Oscar Peterson cannot rely on
the registration because the estate is not named as a copyright
owner on the certificate, which identifies Kelly Peterson and
Jayarvee as the only owners. This argument is easily dismissed --
the plaintiffs in this case are Jayarvee and Kelly Peterson, in her
representative capacity as executrix of the estate of her late
husband. See First Am. Compl. It is of no moment that the
registration certificate fails to note that Kelly Peterson claimed
an interest in the copyright on behalf of her husband's estate,
rather than in her individual capacity. See Family Dollar Stores,

---

[4] Kole also argues that plaintiffs' registration is "invalid" because
it supposedly contains misstatements about when the work was
completed, who its authors are, whether it is a derivative work, and
whether it is properly a work for hire. While in light of the
rulings above, the Court need not address these arguments, the Court
finds each challenged statement to be either indisputably accurate,
entirely immaterial, or a good-faith legal conclusion rather than a
factual representation. See Family Dollar Stores, Inc. v. United
Fabrics Int'l, Inc., 896 F. Supp. 2d 223, 231 (S.D.N.Y. 2012)
("Simply stated, a misstatement or clerical error in the
registration application, if unaccompanied by fraud, should neither
invalidate the copyright nor render the registration certificate
incapable of supporting an infringement action." (quoting 3-12
Nimmer on Copyright § 7.20[B][i])); see also Data Gen. Corp. v.
Grumman Sys. Support Corp., 36 F.3d 1147, 1163 (1st Cir. 1994)
(stating in dicta that a registration misstatement may deprive the
registrant of the usual presumption of validity, but only if the
misstatement is material), abrogated on other grounds by Reed
Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010).

Inc. v. United Fabrics Int'l, Inc., 896 F. Supp. 2d 223, 231
(S.D.N.Y. 2012) (holding that registrations containing innocent
misstatements will still support an infringement action).

Kole's second argument is that plaintiffs' registration
pertains only to the final version of the Peterson-Kole recordings,
and not to any earlier version.  Kole seeks a declaration of
ownership of the original, unedited version, and claims that it was
a copy of that version that she copied and provided to the Internet
radio host in January 2013.

This argument fails for two reasons.  First, the Court has
carefully listened to the version of "More Than You Know" that
appears on the deposit copy plaintiffs enclosed with their
registration application and compared it to the version Kole
provided to blogtalkradio.com.  See Aff. of Paul J. Hanly, Jr., exs.
B, C.  The two versions are indistinguishable in all material
respects, and no reasonable trier of fact could conclude that they
are not copies of one another.  See UMG Recordings, Inc. v. MP3.Com,
Inc., 92 F. Supp. 2d 349, 350 (S.D.N.Y. 2000).

Second, Kole cites no authority for the notion that a copyright
owner is required to separately register every draft or version of
an evolving work.  Such a requirement would be wasteful and
impractical, and courts have consistently rejected it.  See, e.g.,
New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc., No. 88
Civ. 4170 (JMW)(KAR), 1989 WL 22442, at *6 (S.D.N.Y. Mar. 8, 1989).
Indeed, even where the registered work is an independently

14

copyrightable derivative work, "when the same party owns the
derivative . . . work plus the underlying elements incorporated
therein, its registration of the former is 'sufficient to permit an
infringement action on the underlying parts, whether they be new or
preexisting.'"   3-12 Nimmer on Copyright § 7.16[B][5][c] (quoting
Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 284 (4th Cir. 2003),
abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559
U.S. 154 (2010)). So too here: even if, as Kole suggests, the
intermediate "rough cut" of the Peterson-Kole recordings and/or the
final version somehow qualify as derivative works distinct from the
original unedited takes, plaintiffs' registration of the final
version is still sufficient to support this infringement action.

        With Kole's threshold arguments addressed, the Court turns to
the parties' principal dispute as to who owns the copyright to the
Peterson-Kole recordings. Plaintiffs argue, first and foremost,
that they own the copyright because Kole transferred any interest
she had in it to Jayarvee through the You Are There Release.[5]

_____

[5] Kole urges that this argument is not properly before the Court
because it is not expressly alleged in the complaint or stated in
plaintiffs' registration. The Court disagrees. "A complaint for
copyright infringement must allege present ownership of the
copyright by the plaintiff. However, under the 'short and plain
statement' standard of Rule 8(a), detailed pleading concerning how
the plaintiff acquired ownership is not necessary." 5 Charles Alan
Wright & Arthur R. Miller, Federal Practice & Procedure § 1237 (3d
ed. 2013). As for the registration, 17 U.S.C. § 409(5) requires a
registration application to state how the claimant obtained
ownership of the copyright only "if the copyright claimant is not
the author." Here, Jayarvee claims to be an author of the Peterson-
Kole recordings on the ground that they are a "work made for hire."
See 17 U.S.C. § 201(b) ("In the case of a work made for hire, the

15

Section 204 of the Copyright Act provides that a transfer of copyright is valid so long it "is in writing and signed by the owner of the rights conveyed." 17 U.S.C. § 204. Here, Kole does not dispute that her signature on the You Are There Release is genuine or that the release on its face unambiguously surrenders Kole's rights to "the recordings featuring Hilary Kole listed on Exhibit A attached hereto (the 'Recordings')" to "you." Valenti Decl., ex. B. But the release does not include an Exhibit A. Plaintiffs nonetheless argue that, reading the document as a whole, it is clear that the "Recordings" include the four "[s]ongs [r]ecorded" with Oscar Peterson listed in Kole's handwriting on the lower lefthand side of the document. Id. Plaintiffs also contend that Kole signed and gave this form to Valenti in their apartment, where the form was later located after Kole moved out. Plaintiffs accordingly contend that the "you" to whom Kole released her rights can only refer to Jayarvee and Valenti. Plaintiffs further contend that Kole's transferring her rights to Jayarvee through a form release like this accorded with Kole's standard business practice, since she signed an identical form in connection with her "Moments Like This" album and does not dispute that the Moments Release validly transferred her rights to Jayarvee.

Kole, however, tells a very different story about the You Are There Release. As noted in the factual recitation above, Kole

---

employer . . . is considered the author for purposes of this title
. . . .").

16

asserts that she filled out the form release only as a demonstration to another, elderly musician. When she did so, the document contained none of the critical handwritten items plaintiffs now rely upon, which were added only later. Kole further claims that the You Are There Release was never intended to convey any rights to anyone, that it properly belongs to her, not Jayarvee or Valenti, and that she simply mistakenly left it behind when she moved out of her and Valenti's apartment in haste.

Plaintiffs argue in response that Kole's story is simply too implausible to raise a genuine issue of fact for trial. The Court agrees that Kole's version of events is improbable, especially in light of the undisputed fact that in December 2010, just months after the purported date of the You Are There Release, Kole validly released certain rights to Jayarvee by signing an identical form release in connection with her "Moments Like This" album. In the end, however, the Court cannot conclude that Kole's story is so far-fetched that no reasonable fact-finder could credit it. Kole's narrative is internally coherent and consistent with much of the other evidence in the record. In general, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). While there are "rare" cases in which one side relies solely on party-witness testimony "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief

17

necessary to credit the allegations made," <u>Jeffreys v. The City of</u>
<u>New York</u>, 426 F.3d 549, 554-55 (2d Cir.2005) (internal quotation
marks and citations omitted), this is not one of them.  The validity
of the You Are There Release must be resolved at trial.[6]

   In the alternative, even if the release is invalid, plaintiffs
argue the Peterson-Kole recordings constitute a "work made for hire"
under 17 U.S.C. § 201(b).  Section 201(b) of the Copyright Act
provides: "In the case of a work made for hire, the employer . . .
is considered the author for purposes of this title, and, unless the
parties have expressly agreed otherwise in a written instrument
signed by them, owns all of the rights comprised in the copyright."
Section 101 in turn defines "work made for hire" to include "a work
prepared by an employee within the scope of his or her employment."
In determining whether a work was created within the scope of
employment, courts apply common law principles of agency and
"consider whether: (a) the work is of the kind the employee is
employed to perform; (b) it occurs substantially within authorized
time and space limits; and (c) it is actuated, at least in part, by
a purpose to serve the master."  <u>Pavlica v. Behr</u>, 397 F. Supp. 2d
519, 525 (S.D.N.Y. 2005) (internal quotation marks omitted).

---

[6] Kole argues in the alternative that the You Are There Release is
invalid because there is no Exhibit A attached listing the relevant
"Recordings."  But this argument ignores the handwritten list of
"[s]ongs [r]ecorded" at the bottom left of the document.  Valenti
Decl., ex. B.  Even taking the facts in the light most favorable to
Kole, a reasonable fact-finder could conclude that the release, read
as a whole, unambiguously transfers the rights to the four songs
listed, assuming the release is otherwise valid.

Applying this standard, the Court has little difficulty concluding that both sides have raised genuine issues of material fact as to whether Kole created the recordings within the scope of her employment for Jayarvee. On the one hand, Kole worked nearly every day as a "singer/performer and consultant" for Jayarvee, Bierstein Aff., ex. E at OP/J0037, and made the recordings with Oscar Peterson while he was in the midst of an engagement at Jayarvee's jazz club. According to plaintiffs, Jayarvee paid for recording time at NOLA, and arranged the session for the purpose of producing recordings that could be used, along with the other Kole Duets, on an album Jayarvee would produce. But on the other hand, Valenti testified that Oscar Peterson did not understand Kole to be recording in her capacity as a Jayarvee employee, and Kelly Peterson testified that the recording was intended to be a "personal memento for Mr. Valenti and Ms. Kole," and "had nothing to do with work for either [Oscar Peterson] or Ms. Kole." Garbuz Decl., ex. K, at 59, 60. This is a classic question for trial, and cannot be resolved on summary judgment.

The parties' final dispute on this motion concerns plaintiffs' claim for attorneys' fees. Section 505 of the Copyright Act authorizes courts in their discretion to award attorneys' fees to the prevailing party, but Kole argues that any such award in this case is precluded by Section 412, which provides that "no award . . . of attorney's fees . . . shall be made for-- (1) any infringement of copyright in an unpublished work commenced before

19

the effective date of its registration." 17 U.S.C. § 412. Kole

points out that plaintiffs' complaint alleges that the infringed

work is unpublished. First Am. Compl. ¶¶ 10-11. Moreover, the

single act of infringement alleged in the complaint took place on or

about January 22, 2013, id. ¶ 12, six days before the effective date

of plaintiffs' registration, January 28, 2013. Id., ex. A. In

addition, "[w]here the alleged infringement begins before

registration and continues after registration, statutory damages and

attorney fees are still unavailable." Argentto Sys., Inc. v. Subin

Assocs., LLP, No. 10 Civ. 8174, 2011 WL 2534896, at *2 (S.D.N.Y.

June 24, 2011).

Plaintiffs concede as much, but point out that Kole's answer,

as well as her own papers on the instant motion, show that after the

effective date of plaintiffs' registration, Kole deposited a copy of

the Peterson-Kole recordings with the Copyright Office in connection

with her registration application. Ans. ¶ 58; Def.'s 56.1 ¶ 51. If

plaintiffs properly own the copyright to the Peterson-Kole

recordings, making that deposit copy and delivering it to the

Copyright Office infringed plaintiffs exclusive rights to

"reproduce" and "distribute" copies of the copyrighted work. 17

U.S.C. § 106(1), (3).[7] For that reason, the Court agrees with

---

[7] Plaintiffs also represent in their opposition brief that after the
effective date of their registration, Kole also retained a copy of
the recordings, which she offered for inspection and copying during
discovery in this case. See Pls.' Mem. of Law in Opp'n to Def.'s
Mot. for Summ. J. at 19. Those asserted facts are not part of the
summary judgment record before the Court, and in any event,

20

plaintiffs that their claim for attorneys' fees is not barred by Section 412. If plaintiffs ultimately prevail in this case and make an application for fees, however, the limited nature of Kole's infringement after the effective date of plaintiffs' registration may factor into this Court's determination of whether an award of fees is appropriate. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 & n.19 (1994) (holding that awarding attorneys' fees in copyright cases is left to the court's "equitable discretion" so long as it is "faithful to the purposes of the Copyright Act").

Accordingly, the Court's Order dated August 9, 2013 denied the parties' cross-motions for summary judgment for the foregoing reasons. As previously ordered, the bench trial in this case will commence at 2:00 p.m. on September 23, 2013.

Dated:   New York, NY
         September 6, 2013

JED S. RAKOFF, U.S.D.J.

---

plaintiffs provide no argument as to how simply retaining a copy of the recordings and making them available to plaintiffs themselves constitutes copyright infringement.

21