```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
KELLY PETERSON, as Executrix of the     :
Estate of Oscar Peterson, Deceased,     :    13 Civ. 793 (JSR)
and JAYARVEE, INC.,                     :
                                        :    FINDINGS OF FACT,
        Plaintiffs,                     :    CONCLUSIONS OF LAW,
                                        :        AND ORDER
        -v-                             :
                                        :
HILARY KOLODIN, a/k/a HILARY KOLE,      :
                                        :
        Defendant.                      :
----------------------------------------x
```



JED S. RAKOFF, U.S.D.J.

For persons of a certain age or temperament, that blend of simplicity and sophistication commonly called the American Songbook continues to reach our minds and hearts. But when the mind and heart are at war with each other, bitterness and anger override a decent respect for the truth. In the sad case at bar, the wounded feelings of three substantial contributors to the preservation of American song find expression in a shrill cacophony of testimony, some of which cannot survive scrutiny.

Plaintiffs Kelly Peterson, as executrix of the estate of Oscar Peterson, and Jayarvee, Inc., bring this action for copyright infringement against Hilary Kolodin, also known as Hilary Kole, who counter-claims for a declaration of copyright ownership. Plaintiffs allege that they own the copyrights to sound recordings created by Peterson and Kole, and that Kole has infringed those rights. Kole disputes these claims and asserts that she is a co-owner with the Peterson Estate of the copyrights to the sound recordings.

1

Plaintiffs seek a permanent injunction and attorneys' fees and costs. Defendant seeks a declaratory judgment declaring that she has an ownership interest in the disputed copyright, and an order requiring Jayarvee to alter its copyright registration and transfer its ownership to Kole. The defendant's counterclaim also seeks attorney's fees and costs.

Following discovery and motion practice (the latter of which resulted in the Court's Memorandum Opinion dated September 6, 2013), the Court conducted a bench trial on September 23, 2013, October 7, 2013, and October 17, 2013. At the trial, the Court received in evidence approximately sixty exhibits and heard testimony from five witnesses: Kelly Peterson, John Valenti, Jim Czak, Jonas Herbsmann, and Hilary Kole. Following the trial, the parties submitted multiple post-trial memoranda. Having considered all the evidence and briefing, and having made credibility determinations and drawn reasonable inferences from the evidence, the Court makes the following findings of fact and conclusions of law:

Plaintiff Kelly Peterson is the widow of the late renowned jazz pianist Oscar Peterson. Joint Pretrial Consent Order.[1] Oscar Peterson passed away on December 23, 2007, and his widow is one of three executors of his estate. *Id*. Plaintiff Jayarvee, Inc. owns and operates Birdland, a much-admired jazz club in New York City. *Id*. Jayarvee's President and sole shareholder is John Valenti, who,

---

[1] In their Joint Pretrial Consent Order, the parties stipulated that the facts set forth between "pages 2 through the end of the first full paragraph on page 3" in the Court's September 6, 2013 Memorandum Order are undisputed. Joint Pretrial Consent Order at 2.

2

through Jayarvee, has owned and operated Birdland since around 1985. *Id.* Defendant Hilary Kolodin is a professional vocalist of considerable talent and accomplishment, whose "stage name" is Hilary Kole. *Id.*

While performing at Birdland in September 2003, Kole met Valenti. Although Valenti was considerably her senior, the two quickly entered into a romantic relationship, a winter-spring romance perhaps predestined to fail. *Id.* Kole moved in with Valenti in January 2004, and by August 2006, the couple sometimes referred to each other as husband and wife. Trial Transcript ("Tr.") 158. Kole and Valenti maintained a personal relationship until May 2011, when the two separated. Tr. 133. The break-up was bilious, and the mutual hostility between Kole and Valenti remained fully evident at trial. *See, e.g.*, Tr. 120, 194-95.

Between 2004 and May 2011, Kole often performed at Birdland. Tr. 29. During one such engagement, she met the famous but aging pianist Oscar Peterson, and shortly thereafter, on August 25, 2006, Peterson and Kole recorded at the NOLA Recording Studios in New York City a total of twelve takes of four American standard songs, "More Than You Know," "Our Love Is Here To Stay," "My Romance," and "Bewitched, Bothered and Bewildered." Tr. 90-91, 93. Peterson played piano and Kole sang; no other musicians participated or were involved in the recordings. Tr. 92-93. A "touched-up," final version of these recordings, with changes (mostly in the pedaling) by pianist Mike Renzi, was thereafter made, Tr. 15, 94, but the Court

3

does not find the changes material for present purposes and will therefore refer to all the versions as, collectively, the "Recordings." It should be noted, however, that much later, after the instant dispute had erupted, Kelly Peterson and Jayarvee obtained a copyright registration, effective January 28, 2013, for the touched-up version of the four songs, Plaintiffs' Ex. 32, and, in response, Kole obtained a competing copyright registration, effective March 4, 2013, for the original, unedited sound recording of the initial twelve takes. Plaintiffs' Ex. 6; Tr 124-126. Plaintiffs and defendant each dispute the validity of the other side's registration certificate.

Of all the factual disputes in this case, the one the Court finds dispositive concerns a document entitled "Recording Release" signed by Kole. The parties agree that the overall form for this document was created by Jonas Herbsman, Esq., then Kole's attorney, for use in connection with what was called the "Duets" project, which eventually led to a CD of duet performances by Kole and various other artists that was released in 2010. Tr. 100; Tr. 214; Plaintiffs' Ex. 38. Some of the original "Recording Release" forms were used to obtain copyright releases from the other artists who were performing with Kole. Plaintiffs' Ex. 24.

The particular Recording Release document here in issue – hereafter referred to as the "You Are There Release" – is signed by Kole and begins with the statement: "I [i.e. Kole] have rendered services as a musician and/or singer on 2005-2010 in connection with

4

the recordings featuring Hilary Kole listed on Exhibit A attached hereto (the 'Recordings')." Plaintiffs' Ex. 26. The years "2005-2010" are handwritten in a blank space on the form in Valenti's handwriting. *Id*. However, no Exhibit A is attached. But the bottom left side of the release contains a list, in Kole's handwriting, of the four songs Kole recorded with Oscar Peterson, with the notation "w/ Oscar Peterson" after each song. Plaintiffs' Ex. 26; Tr. 62, 103-04.

Paragraph 2 of the You Are There Release states: "In consideration for my services on the Recordings, I have received the sum of ($100.) Dollars, receipt of which is hereby acknowledged. I am entitled to no other compensation in connection with the Recordings or the exploitation thereof in any and all media." *Id*. The sum "$100" is handwritten in a blank on the form. *Id*.

The remaining paragraphs of the You Are There Release (1) transfer all rights to the Recordings to an unidentified "you," (2) grant "you" the right to use the releasor's name and likeness in connection with the Recordings, (3) provide that the release contains the entire agreement between the parties, and (4) provide for the agreement to be governed by New York law. Plaintiffs' Ex. 26. Regarding the "you," Mr. Herbsmann, who created the form, testified that the form was intended to be printed on letterhead of whoever was acting as "you." Tr.214-15.[2] However, none of the various

---

[2] While neither side chose to call Herbsmann - who at times acted as Kole's attorney and at other times Jayarvee's - the Court exercised its own authority to call him as a witness. Tr. 207-08.

releases introduced in evidence was printed on any letterhead. Plaintiffs' Ex. 24.

The bottom right side of the document contains Kole's signature, address, and Social Security Number, all in Kole's handwriting. Plaintiffs' Ex. 26; Tr. 100-01. The bottom of the page also includes the date "2/10," in Valenti's handwriting. Plaintiffs' Ex. 26.

The parties dispute the circumstances under which Kole signed and filled out the You Are There Release. Valenti testified that Kole signed and gave him the You Are There Release in the dining room of their apartment in February 2010, after the Kole Duets had been recorded but before permission had been obtained to include the Peterson recordings in that CD (a permission that, in the event, was never obtained). Tr. 274; 745-75. Specifically, Valenti testified that at their dining room table, Kole pulled out a blank release, wrote in "$100" and listed all of Peterson's songs "meticulously," while Valenti wrote in the years "2005-2010," and wrote in "2/10" at the bottom. Tr. 274. Although a copy of the release was produced earlier in discovery, the original was subsequently produced by Valenti, who testified that he discovered the original copy of the release in his desk in the Upper East Side apartment that he and Kole had previously shared.[3] Tr. 273, 278.

---

[3] "We kept them in separate - she kept all her papers in her file cabinets; I kept mine in the desk in the dining room - in the living room . . . . I went through my desk and found the original." Tr. 273, 278.

Kole offers a very different account. At trial, Kole testified that the release was "never intended for anyone," and that she signed and wrote her personal information, including her Social Security number, on the You Are There Release while it was substantially blank, simply to demonstrate to an elderly musician, Hank Jones - now deceased but then aged 89 or 90, and one of the musicians with whom she had recorded a duet - how the form should be filled out. Tr. 99-101. On three prior occasions, however, Kole had testified that she could not remember the identity of the person for whom she had signed the form. Tr. 106. Upon being asked at trial why she did not print Hank Jones's name rather than her own in showing the elderly pianist how to sign the release, Kole answered "[m]y first reaction of you sign your name is I sign my name. You sign your address . . . Social Security number, and that's how you do it." Tr. 102.

Kole further testified that after signing the release as an example for Hank Jones, she placed it in her file, and that a full year later, she handwrote the four song recordings on the bottom of the page as an entirely unrelated notation, using the paper as essentially "scrap paper." Tr. 103-105. When asked for what purpose she wrote down the songs at all, Kole testified that "I was looking at what was recorded and what were the other songs that were going to work in their place. For example, I needed to find more of a swing song for Our Love Is Here To Stay, or I had to find a

7

comparable ballad to My Romance. Things of that nature. It's meaningless." Tr. 105.

In addition to the You Are There Release, there was also received in evidence a separate release for a different, earlier recording (the "Moments Release"), which Valenti also found in the apartment that he and Kole formerly shared, along with the You Are There Release. Tr. 74, 278-79. Like the You Are There Release, the Moments Release was signed by Kole, with all blank spaces filled in, but once again, instead of an Exhibit A, there was listed (this time, in Valenti's handwriting), the words "either: Come Back to Me/Moments Like This," on the face of the document. Plaintiffs' Ex. 30. Kole does not dispute that the Moments Release was intended to be a release to Jayarvee (Valenti).

The original of the You Are There Release, as presented as an exhibit at trial, had staple holes in the upper left corner. Plaintiffs' Ex. 26. While Valenti testified that he had stapled the You Are There Release to the Moments Release, Kole testified that she had stapled the You Are There Release to a list of songs. Tr. 278-80; Tr. 104-15. Upon observation, the Court found that the placement of the staple holes in the You Are There Release correspond exactly with the placement of the staple holes in the Moments Like This release, in a manner that would have occurred if the two equal-sized pieces of paper had been stapled together. Tr. 278-80; Plaintiffs' Ex. 26; Plaintiffs' Ex. 30.

From the foregoing, and as further elaborated below, the Court finds that Valenti's testimony is more credible than Kole's. But that does not necessarily mean that plaintiffs have met their burden of proving infringement. "To establish infringement of copyright, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010). Both sides agree that the copyrights in any of the Recordings here in issue are jointly owned by the Peterson Estate and by either Kole or Jayarvee. While plaintiffs claim that, from the outset, the non-Peterson ownership of the recordings belonged to Jayarvee because Kole was acting as an agent of Jayarvee, the Court, without reaching a conclusion as to this assertion, is somewhat skeptical of it, since there would have been no need for Jayarvee to obtain the You Are There Release if this were the case. But the Court does conclude that any copyright interest Kole may have had in any of the Recordings was transferred to Jayarvee through the You Are There Release.

Section 204 of the Copyright Act provides that a transfer of copyright is valid so long it "is in writing and signed by the owner of the rights conveyed." 17 U.S.C. § 204. Copyright transfers under section 204 are analyzed under the common law of contracts, here the law of New York. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 627, 631-32 (2d Cir. 1995); *see also Kowalchuk v. Stroup*, 61 A.D.3d 118, 873 N.Y.S. 43 (1st Dept. 2009) (delineating the elements required for

9

contract formation under New York law). Both under section 204 and under New York law, while the transferor must be identified and be a signatory to the transfer, "neither statute nor case law require" that the transferee be explicitly named, let alone a signatory. *Sunham Home Fashions, LLC v. Pem-Am, Inc.*, 2002 WL 31834477, *7 (S.D.N.Y.). Rather, the identity of the transferee may be determined in appropriate cases by circumstantial evidence and other objective manifestations of the parties' intent. *Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296 (S.D.N.Y. 1997), *aff'd*, 166 F.3d 1201 (2d Cir. 1998).

Rejecting Kole's testimony that the You Are There Release was intended to be "meaningless," the Court finds that the release, on its face, transfers Kole's entire interest to all versions of the Recordings to "you." The circumstantial evidence strongly indicates that "you" must be Jayarvee (Valenti). This is proved, not only by Valenti's testimony, which the Court credits, but also by the adverse inference that the Court draws from Kole's dubious testimony. It is further evidenced by the fact that the original remained in Valenti's possession, suggesting that the parties intended to release the Recording to Valenti/Jayarvee, and by the fact that the You Are There Release corresponded in every material respect to the Moments Like This Release, which even Kole concedes was a transfer of her copyright to Jayarvee. It also appears that third parties operated on the assumption that Jayarvee (Valenti) owned the copyright and that Kole did not challenge that assumption. For example, although Kelly Peterson initially refused to allow the

10

Recordings to be made public (she did not think it represented Oscar Peterson's best work), at one point she prepared a draft agreement for the use of the four "touched up" tracks. Plaintiffs' Ex. 22. That draft identified Valenti, not Kole, as the copyright owner of the Recordings. Although Kole then sent Kelly Peterson a lengthy email protesting other terms of the draft agreement, Kole at no point protested the draft agreement's statement that the copyright belonged to Peterson and Valenti (Jayarvee), rather than Peterson and Kole. Plaintiffs' Ex. 15; Plaintiffs' Ex. 22.

Defendant nevertheless argues that the identity of "you" in the You Are There Release is so ambiguous as to render the contract unenforceable. *See, e.g.*, *Mamaroneck Ave. Corp v. 151 East Post Road Corp.*, 78 N.Y.2d 88, 91 (1991). Specifically, defendant's counsel, while agreeing that the "you" cannot be Kole, and could have been Jayarvee (Valenti), argues that it could also have been an entity called Justin Time Records, which was the licensee of the Duets album that the Recordings were originally designed to be part of. Tr. 439-440; Defendant's Post-trial Brief dated October 31, 2013 at 3. But this is contradicted by Kole's own testimony, not to mention Valenti's. Neither of them – the only two people involved in the creation of the You Are There Release – testified that the release had anything to do with Justin Time Records, nor is there any other material evidence suggesting such a connection, and defendant's counsel's suggestion is therefore no more than unsupported speculation.

11

Defendant's counsel also argues that, even if the "you" is Valenti, that does not convey rights to the co-plaintiff here, Jayarvee Records. But the unequivocal evidence at trial demonstrated conclusively that, for all copyright purposes, Valenti always operated in the name of his solely owned corporation Jayarvee (i.e. Valenti's intitials, J.R.V.) and that Kole at all times understood as much. Tr. 246.

In defendant's final, post-trial brief to the Court, defendant's counsel raises a number of additional arguments. Aside from being untimely, they are substantively meritless. For example, defendant argues that the subject matter of the You Are There Release is too indefinite to be enforceable. This is patently absurd. A list of four songs is clearly written on the You Are There Release, in Kole's own handwriting, with the notation "w/ Oscar Peterson" after the name of each song. Tr. 103-04. These can only refer to the (Peterson/Kole) Recordings.

Defendant also notes that, where the parties to a transaction are in a confidential relationship, New York law places on the beneficiary of the transaction the burden of demonstrating the fairness of the transaction. *Robinson v. Day*, 103 A.D.3d 584, 585-86; 960 NY.S.2d 397, 400 (1st Dept. 2013) ("[I]f a confidential relationship exists, the burden is shifted to the beneficiary of the transaction to prove the transaction [was] fair and free from undue influence."). Relying on *Robinson*, defendant asserts that Kole and Valenti were still in a confidential relationship as of the date of

the release and that Valenti therefore bears the burden to prove that the contract was fair. In this regard, defendant questions whether $100 consideration was actually paid, and asks the Court to find that, even if it was paid, the money likely came from Kole and Valenti's joint funds. In any event, defendant argues, $100 was inadequate consideration for the Peterson Recordings.

This defense is both untimely and, on the merits, unpersuasive. Defendant had ample opportunity to raise this defense at various stages in the litigation process, but chose not to mention it at all until closing argument at trial, and not to brief the issue (or refer to *Robinson*) until defendant's post-trial reply, after plaintiff had already submitted its post-trial briefing, thus giving plaintiff no opportunity to respond. Thus, the defense is untimely and has been waived.

But even if there were no waiver, the defense fails. The Court fully credits Valenti's testimony that, at the time the release was signed, Valenti paid Kole $100 in cash. Tr. 302. Given Kelly Peterson's posture at the time that she would not consent to the public release of the Recordings, this was more than adequate consideration. Moreover, *Robinson* advises that "adequacy of consideration is not a proper subject for judicial scrutiny . . . *absent fraud or unconscionability*," neither of which, the Court finds, was substantially present here. *Id.* (quoting *Appel v. Prudential-Bache Securities Inc.*, 81 N.Y.2d 470 (1st Dept. 2013)).

13

Thus, assuming *Robinson* applies at all, plaintiffs have carried the burden it imposes.

In sum, ownership of all copyrights in the Recordings belongs jointly to Peterson and Jayarvee (Valenti). The Court further finds that there is a threat of infringement of that ownership sufficient to support plaintiffs' request for a permanent injunction, as shown, *inter alia*, by the fact that Kole not only attempted to copyright a materially identical version of the recordings but also arranged for one of the recordings, of the song "More Than You Know," to be played on an internet website, blogtalkradio.com. Tr. 122. Accordingly, the Court concludes that copying has occurred in violation of 17 U.S.C. § 106, and that plaintiffs are entitled both to a declaration that they are owners of the copyrights in all versions of the Recordings and to an injunction permanently barring Kole from any sale, distribution, or other public use of the recordings.

With regard to plaintiffs' request for attorneys' fees and costs, section 412 of the Copyright Act provides that "no award of statutory damages or attorney's fees, as provided by sections 504 and 505, shall be made for: (1) any infringement of an unpublished work commenced before the effective date of its registration." 17 U.S.C. § 412. Here, the Amended Complaint alleged that the work was "unpublished," and the effective date of plaintiffs' registration is January 28, 2013. First Amended Complaint ("Am. Compl.") ¶¶ 10-11. It is true that an act of infringement - arranging for a version of

14

"More Than You Know" to be played over the internet - occurred six days earlier, on January 22, 2013, but it was a very modest infringement. Am. Compl. ¶ 12. It is true also that, after the effective date of the registration, Kole committed an additional act of infringement in depositing a copy of one version of the Recordings with the Copyright Office in support of her application for a competing registration. Plaintiffs' Ex. 32. But that was at a point in time where Kole had at least a colorable claim to the Recordings, albeit one that the Court has now rejected. In these circumstances, the Court concludes that an award of attorneys' fees would be excessive. *See, e.g., Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994) (holding that awarding attorneys' fees in copyright cases is left to the court's "equitable discretion").

For the reasons set forth above, the Court hereby finds and declares that plaintiffs are the owners of the copyrights in all the versions of the Recordings. The permanent injunction requested by plaintiffs shall issue immediately along the lines stated above, but plaintiffs are directed to submit a more final proposed permanent injunction within five business days of the date hereof. Defendant may then submit objections thereto within five business days thereafter, following which the Court will issue the final injunction and judgment.

SO ORDERED.

Dated:   New York, NY
         January 29, 2014                    JED S. RAKOFF, U.S.D.J.

15